UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REHAB SOLUTIONS, INC.,

    Plaintiff,

v.

ST. JAMES NURSING & PHYSICAL
REHABILITATION CENTER, INC.,

    Defendant.
_____/

Case No. 14-cv-13651

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER GIVING DEFENDANT OPPORTUNITY TO PROVIDE DEPOSITION OF ROGER MALI PRIOR TO SUMMARY JUDGMENT RULING [33]**

**I. INTRODUCTION**

On September 19, 2014, Rehab Solutions, Inc. ("Rehab Solutions" or "Plaintiff"), commenced this breach of contract action against St. James Nursing & Physical Rehabilitation Center, Inc. ("St. James" or "Defendant"), alleging that St. James failed to pay certain invoices for services rendered by Rehab Solutions. *See* Dkt. No. 1. Presently before the Court is Rehab Solutions' Motion for Summary Judgment [33]. This matter is fully briefed and a hearing was held on August 18, 2015. The Court will give St. James an opportunity to provide the deposition of Mr. Mali prior to ruling on Rehab Solutions' Motion for Summary Judgment [33].

**II. BACKGROUND**

St. James is a Michigan corporation with its principal place of business in Michigan. *See* Dkt. No. 1 at ¶ 1. It is a nursing facility that provides nursing care and services, including physical therapy to the sick and elderly. *See id.* at ¶ 6. Rehab Solutions is a North Carolina corporation with its principal place of business in North Carolina. *See id.* at ¶ 2. It provides physical, occupational and speech therapy services in nursing facilities. *See id.* at ¶ 5.

**A. The Agreement**

On October 24, 2013, Rehab Solutions and St. James entered into a one-year outsourcing Therapy Services Agreement ("the Agreement"). *See* Dkt. No. 1-2 at ¶ 1. The Agreement automatically renewed for successive one-year terms unless either party delivered written notice to the other of intent not to renew at least thirty days prior to the end of each term. *See id.*

Per the terms of the Agreement, Rehab Solutions was to provide St. James with "specialized therapy services," including physical therapy, occupational therapy, and speech and language pathology. *See* Dkt. No. 1-2 at ¶ 2. The Agreement indicates that the scope of the services provided by Rehab Solutions included, amongst other things, "accurate CPT coding and ICD-9 identification on service logs submitted to the billing office" and a requirement that Rehab Solutions "[p]rovide all required therapy billing information to the business office per the terms of the contract[.]" Dkt. No. 1-2 at 10.

The Agreement further indicates that Rehab Solutions was to be compensated by St. James "for services rendered during each calendar month according to invoices submitted to [St. James] by Rehab Solutions." *Id.* at ¶ 3. The Agreement required that Rehab Solutions "be paid in full within 30 days after each invoice is submitted by Rehab Solutions to [St. James]." *Id.* The invoices were required to "reflect the Schedule of Rates agreed to by Rehab Solutions and [St. James]" *Id.* (referencing Dkt. No. 1-2 at 8-9 "Exhibit A-Fee Schedule").

The Agreement also contained the following provision outlining an appeals procedure in the event that Rehab Solutions claimed and received payment from St. James for service that was later disallowed, denied or recaptured by a third-party:

> In the event Rehab Solutions claims and receives payment from [St. James] for service, reimbursement for which is later disallowed or recaptured in part or in full by the federal, state or local government, or other third party payor, including without limitation the Medicare or Medicaid programs, and where such

> disallowance or recapture is directly attributable to the acts or omissions of Rehab Solutions, its employees or contractors, . . . Rehab solutions shall promptly refund the disallowed or recaptured amount, previously received by Rehab Solutions to [St. James] upon final resolution (by the fiscal intermediary, carrier, or, if appealed, by final administrative or judicial determination)[.]

Dkt. No. 1-2 at ¶ 4.1.[1] However, the Agreement indicates that Rehab Solutions would only refund the disallowed or recaptured amount if the denial was based on a finding that "[t]he services were not medically necessary; . . . [t]he services were otherwise not covered services under polices and the rules of any applicable payment program; or, . . . [t]he services were not supported by timely and complete invoices and other necessary documentation of a claim." *Id.* at ¶¶ 4.1.1–4.1.3. After Rehab Solutions provided a refund for a claim, the Agreement contained a procedure for Rehab Solutions to appeal the disallowed claim. *Id.* at ¶¶ 4.2–4.2.2.

 St. James was required by the Agreement to provide notice to Rehab Solutions with respect to denied claims. *See* Dkt. No. 1-2 at ¶ 4.3. Specifically, the Agreement indicates that "[i]n order to timely appeal denied claims, Rehab Solutions requires notification and receipt of the detailed remittance advice and UB04 for residents within 14 calendar days of the 'paid date' on the remittance advice." *Id.* at ¶ 4.3.1. If St. James did not notify Rehab Solutions "of such a claim denial . . . disallowance or recapture as required [in the Agreement], Rehab Solutions [was] entitled to receive and retain full payment of such claim from [St. James] and [had] no obligation to refund or reimburse any portion of such claim to [St. James.]" *Id.* at ¶ 4.3.2.

Per the terms of the agreement, either party could terminate the Agreement if either materially failed "to comply with any of the obligations, liabilities or undertaking assumed by such party under this Agreement" following a stated period of written notice. *See* Dkt. No. 1-2 at

---

[1] The Agreement specifically notes that "without limitation, Rehab Solutions shall have no obligation to refund or reimburse in any instance where Rehab Solutions has committed no act or omission giving rise to disallowance or recapture but an act or omission of [St. James] or a third party results in disallowance or recapture[.]" Dkt. No. 1-2 at ¶ 4.1.

¶ 1. However, Rehab Solutions could terminate the Agreement "immediately" upon the occurrence of, amongst other things, the "failure of [St. James] to pay compensation as provided[.]" *Id.* The Agreement also contained a choice of law provision indicating it was to "be governed and construed in accordance with the laws of the State of North Carolina." *Id.* at ¶ 16.

### B. The Dispute

Rehab Solutions began providing services at St. James' facility in October of 2013, and provided invoices for services rendered through September 2014. *See* Dkt. No. 1-5 at 7-17. Rehab Solutions asserts that it provided St. James with "the necessary information to seek reimbursement from third-party payors for the services rendered by Rehab Solutions[,]" including, "*inter alia*, therapy and service logs, ICD-9 codes for medical treatment diagnoses, G codes, change of therapy and information regarding the onset, star and end dates of care." Dkt. No. 33 at 13 (citing Dkt. No. 33-5 at ¶¶ 4, 9-10 "Affidavit of Brandy Shumaker").

Nevertheless, Rehab Solutions asserts that St. James did not pay Rehab Solutions for services rendered from October 2013 through April 2014. *See* Dkt. No. 33 at 14 (citing Dkt. No. 33-4 at ¶ 10 "Affidavit of Donald R. Tesner"). Rehab Solutions claims that it made numerous attempts to collect past-due amounts until it sent a demand letter to St. James on May 14, 2014, requesting that St. James immediately pay all past-due invoices. *Id.* (citing Letter from Emily A. Shupe, Counsel for Rehab Solutions, to Administrator of St. James (May 14. 2014) (Dkt. No. 1-3)). Rehab Solutions further asserts that "St. James did not pay those invoices, but it represented that it would work towards a payment plan for the outstanding invoices if Rehab Solutions would continue to provide services at its facility." *Id.* (citing Dkt. No. 33-4 at ¶ 10).

Accordingly, Rehab Solutions states that it kept providing services while the parties "attempted to negotiate a payment plan." Dkt. No. 14 (citing Dkt. No. 33-4 at ¶ 11). Rehab

Solutions argues that "St. James never raised any issues with the services rendered, the amounts of the invoices, or the third-party payor reimbursement information." *Id.* To the contrary, Rehab Solutions claims that "H. Roger Mali, a principal of St. James, inquired if Rehab Solutions would replace the current therapy service provider in another one Mali's skilled nursing facilities." *Id.* (citing Dkt. No. 33-4 at 13-14, ¶ 15).

Rehab Solutions acknowledges that "St. James did make some payments towards the past-due invoices during the parties' negotiations in the summer of 2014." Dkt. No. 33 at 13 (citing Dkt. No. 33-4 at 11, ¶ 11). However, Rehab Solutions is adamant that "at no time did Rehab Solutions ever inform St. James that these payments constituted a full payment of its debt to Rehab Solutions." *Id.* (citing Dkt. No. 33-4 at ¶ 11). Thus, Rehab Solutions claims that "[d]espite the initial progress towards repayment, St. James again became delinquent in its payments[.]" *Id.* at 14-15 (citing Dkt. No. 33-4 at ¶ 12).

On August 29, 2014, Rehab Solutions sent St. James a letter in which it informed St. James that, unless certain conditions were met, including payment of the then-outstanding balance of $265,763.93, Rehab Solutions would terminate the Agreement effective September 12, 2014. *See* Dkt. No. 33 at 15 (citing Letter from Emily A. Shupe, Counsel for Rehab Solutions, to Administrator of St. James (August 29, 2014) (Dkt. No. 1-4)). Still, Rehab Solution contends that St. James did not pay any portion of the outstanding balance. *Id.* (citing Dkt. No. 33-4 at ¶¶ 13-14). Accordingly, Rehab Solutions states that it terminated the Agreement pursuant to Section 1(d) on September 12, 2014. *See id.* (referencing Dkt. No. 1-2 at ¶ 1).

St. James gives a different account of the relationship between the parties. St. James emphasizes that Rehab Solutions "was **required** to record in a 'Therapy Log Book' the nature of the services rendered and the resident for whom said services were provided." Dkt. No. 44 at 6.

(emphasis in original). According to St. James, Rehab Solutions "[i]mmediately . . . began defaulting on its obligation to accurately record and document the services that they had provided to St. James' residents in the Therapy Logs." *Id.* Specifically, St. James argues that Rehab Solutions "refused to remit payment previously made back to St. James, or alternatively, apply such payments to other amounts due and owing[.]" Dkt. No. 44 at 7.

As a result, St. James asserts that "an alleged discrepancy developed between the amounts that [Rehab Solutions] invoiced St. James for, and the amounts that [St. James was] demanding from the insurance carriers." *Id.* St. James claims that it "**immediately** communicated the issue to [Rehab Solutions] and reiterated the necessity of proper record keeping to ensure that [Rehab Solutions was] promptly and accurately compensated for [its] services and that St. James was remunerated for payments it had made to [Rehab Solutions]." *Id.* (emphasis in original). However, as the balance of the claims continued to grow, St. James argues that Rehab Solutions "refused to correct the deficiencies and inaccuracies in the Therapy logs and in some cases, **refused to provide any documentation whatsoever!**" Dkt. No. 44 at 7 (emphasis in original). Thus, despite the fact that St. James asserts it would reiterate "that in order for payments to be made to [Rehab Solutions], St. James **needed** the Therapy Logs to be capable of billing the insurance carriers." *Id.* (emphasis in original).

Rehab Solutions began to demand payment in May of 2014, but St. James indicates that Rehab Solutions did so "**despite repeated requests from St. James that [Rehab Solutions] correct, and in many instances provide at all, the Therapy Logs which St. James required in order to bill the insurance carriers**." Dkt. No. 44 at 7 (emphasis in original). When St. James refused to pay without proper Therapy Logs, St. James asserts that Rehab Solutions "began to falsify the Therapy Logs that it did provide to St. James, in many cases sending

Invoices to St. James which grossly exaggerated the services rendered; and in others, invoicing St. James for services that were never actually performed." *Id.*

St. James concludes arguing that it "has no conflict with paying [Rehab Solutions] for the services it has rendered on behalf of St. James' patients." Dkt. No. 44 at 8. However, St. James argues it is incapable of making "payments on an alleged balance which, [Rehab Solutions] has repeatedly inflated through exaggerated costs and services; and for services that St. James is incapable of invoicing to the appropriate insurance carriers as a result of [Rehab Solutions'] failure and/or refusal to provide accurate therapy records." *Id.*

### III. DISCUSSION

In the briefing, St. James was adamant that Rehab Solutions "was required to record in a 'Therapy Log Book' the nature of the services rendered and the resident for whom said services were provided." Dkt. No. 44 at 6. Rehab Solutions takes the position that "the Agreement does not require Rehab Solutions to provide St. James with 'Therapy Logs.'" Dkt. No. 45 at 5. After reviewing the record, the Court agrees with St. James on this point

The Agreement indicates that, amongst other things, Rehab Solutions was required to provide "accurate CPT coding and ICD-9 identification on service logs submitted to the billing office" and "all required therapy billing information to the business office per the terms of the contract[.]" Dkt. No. 1-2 at 10. Critically, the affidavit of Rehab Solutions' own witness, Mr. Brandy Shumaker, similarly indicates that "[t]he information *necessary* for reimbursement" includes "[t]herapy service records and logs, including minutes of therapy provided[.]" Dkt. No. 33-5 at ¶ 4(a).[2] Accordingly, it appears that Rehab Solutions is incorrect in its assertion that "the

---

[2] Mr. Shumaker further indicates that, consistent with the Agreement the following were necessary in order to be provided to St. James: (1) "Internal Classification of Disease (ICD-9) Codes, which show which diseases are applicable to each individual resident. This needs to be included on the billing to know why the resident is being treated by nursing and or therapy;" Dkt. No. 33-5 at ¶ 4(b); and (2) "Current Procedural Terminology ("CPT")

Agreement does not require Rehab Solutions to provide St. James with 'Therapy Logs.'" Dkt. No. 45 at 5.

Importantly, however, Rehab Solutions argued in its briefs that "[e]ven if there were such a requirement, Brandy Shumaker's affidavit that St. James was given access to all information for St. James to seek reimbursement from insurance carriers through Rehab Solutions' software applications is undisputed." Dkt. No. 45 at 5. At the hearing, Rehab Solutions re-emphasized this argument and correctly noted that St. James makes many assertions without citing case law or the record to support its argument.

The Court stressed this fact at the hearing. In response, Defense Counsel informed the Court that he had mistakenly forgot to attach an affidavit from his client in Response to the Plaintiff's Motion for Summary Judgment. Astonishingly, Defense Counsel did not have the affidavit with him. Inexplicably, he has since failed to provide the Court with a copy of this affidavit despite the fact that the hearing took place two weeks ago. Moreover, when repeatedly pressed to direct the Court to any evidence in the record to support his case, Defense Counsel continued to provide conclusory assertions and was unable to specifically point to anything in the record because he claimed his clients did not keep a paper trail.

Put simply, St. James' conclusory assertions in its briefs and at the hearing are insufficient pursuant Rule 56 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by citing to particular parts of materials in the record[.]") (emphasis added); *see also Bennett v. Louisville Metro Gov't*, No. 14-6307, 2015 WL 3893259, at *3 (6th Cir. June 25, 2015) ("Counsel's reliance on items that are not part of the record does not suffice to generate a

---

Codes are used to show what types of services were rendered during each therapy session;" *id.* at ¶ 4(f). *Cf.* Dkt. No. 1-2 at 10 (noting Rehab Solutions was required to provide "accurate CPT coding and ICD-9 identification on service logs submitted to the billing office[.]").

genuine issue of material fact. When responding to a motion for summary judgment, '[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.' '[T]he non-moving party must present evidence upon which a reasonable jury could find in her favor.' 'A plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position.' The party opposing summary judgment must instead 'show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.' Bald assertions do not a jury question make; a jury could not find in favor of Bennett on the strength of her counsel's representations alone.") (internal citations omitted) (emphasis in original).

Rule 56(e) of the Federal Rules of Civil Procedure provides two different options for this Court to take in this situation. The first option is rather forgiving. Rule 56(e) empowers a court to give a party who has failed to address a summary judgment movant's assertions of fact "an opportunity to properly support or address" the fact. FED. R. CIV. P. 56(e)(1); *see also* FED. R. CIV. P. 56(e)(4) (allowing the Court to "issue any other appropriate order."). On the other hand, Rule 56(e) sets forth a less forgiving approach allowing a court to "consider [a] fact undisputed" if it has not been properly supported or addressed as required by Rule 56(c). *See* FED. R. CIV. P. 56(e)(2); *see also* FED. R. CIV. P. 56(e)(3) (allowing the Court to "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it[.]").

After the hearing, the Court was very close to granting Plaintiff's Motion for Summary Judgment in light of the briefing and argument put forth by Defendant. Nevertheless, Defendant did note that there had been no depositions in this case and that a deposition was scheduled for the first week of September. The Court considered this information with the guidance of the

2010 Advisory Committee Note to rule 56(e) which states that, under Subdivision (e)(1), "afford[ing] an opportunity to properly support or address [a] fact" is "in many circumstances . . . the court's preferred first step." FED. R. CIV. P. 56(e) 2010 advisory committee's note; *see also id.* (noting that with respect to Subdivision (e)(4) "[t]he choice among possible orders should be designed to encourage proper presentation of the record.").

Here, the only testimonial evidence the Court can consider are two self-serving affidavits from individuals from Rehab Solutions. St. James has directed the Court to nothing, although there is scant evidence in the record that *possibly* supports St. James position.[3] Overall, the record is inadequate for this Court to make an informed decision regarding Plaintiff's Motion for Summary Judgment. *See Grimes v. D.C.*, No. 13-7038, 2015 WL 4430157, at *7 (D.C. Cir. July 21, 2015) ("Indeed, for the evidentiary burden that Rule 56(c) places on nonmovant plaintiffs to function, a court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part."); 11 James WM. Moore et al., *Moore's Federal Practice* § 56.99[2][a] (Matthew Bender 3d ed. 2015) ("[Giving a party another opportunity to support or address a fact] will often be the best option, minimizing the chance of an unjust result based on an inadequate record.").

---

[3] After reviewing every piece of record evidence in this matter, the Court found one piece of evidence that *possibly* supports St. James position that there were complaints about billing. There is one email from Mr. Mali, the principal of St. James, from the negotiations with Rehab Solutions regarding the payments. In the email, from July of 2014, Mr. Mali impliedly supports the position of St. James in this litigation—that the invoices were incorrectly billed and that St. James raised invoice issues with Rehab Solutions:

> I think the only main item is that we need some sort of mechanism to reconcile the bills (even the past due bills). . . . [T]he idea is that we have to have a right to work with Rehab Masters to reconcile the past due invoices. I think some of the issues that got us to where we are was the misunderstanding with some of the bills. To that end - I think as long as we agree that the parties will work in good faith and mutual acceptable adjustments, that works for everyone.

Dkt. No. 44-3 at 75; *see also id.* at 81 (amending a proposed forbearance agreement sent by Rehab Solutions to clarify that certain issues were raised with regard to the amounts and services rendered under the services agreement at another facility, and seeking "reconciliation" with Rehab Solutions to reach something mutually agreeable. This is not dispositive, however, because it did not deal with St. James).

## IV. Conclusion

In light of the record before the Court, the Court **HEREBY ORDERS** Defendant to provide an expedited copy of Mr. Mali's deposition **no later than September 8, 2015**. *Cf. Jimmerson v. Meyers*, No. 3:14-CV-342, 2015 WL 470456, at *1 (N.D. Ind. Feb. 3, 2015) (giving an opportunity to provide additional detail); *Parks v. Blanchette*, No. 3:09-CV-604 VAB, 2015 WL 1970526, at *1 (D. Conn. May 1, 2015) (directing Defendants to resubmit affidavits of witnesses).

IT IS SO ORDERED.

Dated: August 28, 2015

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge