UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REHAB SOLUTIONS, INC.,

    Plaintiff,

v.

ST. JAMES NURSING & PHYSICAL
REHABILITATION CENTER, INC.,

    Defendant.
_____/

Case No. 14-cv-13651

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [33]**

**I. INTRODUCTION**

On September 19, 2014, Rehab Solutions, Inc. ("Rehab Solutions" or "Plaintiff"), commenced this breach of contract action against St. James Nursing & Physical Rehabilitation Center, Inc. ("St. James" or "Defendant"), alleging that St. James failed to pay certain invoices for services rendered by Rehab Solutions. *See* Dkt. No. 1. Presently before the Court is Rehab Solutions' Motion for Summary Judgment [33]. This matter is fully briefed and a hearing was held on August 18, 2015. After reviewing the record in its entirety, the Court will **DENY** Rehab Solutions' Motion [33]. The Court's Opinion and Order is set forth in detail below.

**II. BACKGROUND**

St. James is a Michigan corporation with its principal place of business in Michigan. *See* Dkt. No. 1 at ¶ 1. St. James is a nursing facility that provides nursing care and services, including physical therapy to the sick and elderly. *See id.* at ¶ 6. Rehab Solutions is a North Carolina corporation with its principal place of business in North Carolina. *See id.* at ¶ 2. Rehab Solutions provides physical, occupational and speech therapy services in nursing facilities. *See id.* at ¶ 5.

**A. The Agreement**

On October 24, 2013, Rehab Solutions and St. James entered into a one-year outsourcing Therapy Services Agreement ("the Agreement"). *See* Dkt. No. 1-2 at ¶ 1. The Agreement automatically renewed for successive one-year terms unless either party delivered written notice to the other of intent not to renew at least thirty days prior to the end of each term. *See id.*

Per the terms of the Agreement, Rehab Solutions was to provide St. James with "specialized therapy services," including physical therapy, occupational therapy, and speech and language pathology. *See* Dkt. No. 1-2 at ¶ 2. The Agreement indicates that the scope of the services provided by Rehab Solutions included, amongst other things, "accurate CPT coding and ICD-9 identification on service logs submitted to the billing office" and a requirement that Rehab Solutions "[p]rovide all required therapy billing information to the business office per the terms of the contract[.]" Dkt. No. 1-2 at 10.

The Agreement further indicates that Rehab Solutions was to be compensated by St. James "for services rendered during each calendar month according to invoices submitted to [St. James] by Rehab Solutions." *Id.* at ¶ 3. The Agreement required that Rehab Solutions "be paid in full within 30 days after each invoice is submitted by Rehab Solutions to [St. James]." *Id.* The invoices were required to "reflect the Schedule of Rates agreed to by Rehab Solutions and [St. James]" *Id.* (referencing Dkt. No. 1-2 at 8-9 "Exhibit A-Fee Schedule").

The Agreement also contained the following provision outlining an appeals procedure in the event that Rehab Solutions claimed and received payment from St. James for service that was later disallowed, denied or recaptured by a third-party:

> In the event Rehab Solutions claims and receives payment from [St. James] for service, reimbursement for which is later disallowed or recaptured in part or in full by the federal, state or local government, or other third party payor, including without limitation the Medicare or Medicaid programs, and where such

> disallowance or recapture is directly attributable to the acts or omissions of Rehab Solutions, its employees or contractors, . . . Rehab solutions shall promptly refund the disallowed or recaptured amount, previously received by Rehab Solutions to [St. James] upon final resolution (by the fiscal intermediary, carrier, or, if appealed, by final administrative or judicial determination)[.]

Dkt. No. 1-2 at ¶ 4.1.[1] However, the Agreement indicates that Rehab Solutions would only refund the disallowed or recaptured amount only if the denial is based on a finding that "[t]he services were not medically necessary; . . . [t]he services were otherwise not covered services under polices and the rules of any applicable payment program; or, . . . [t]he services were not supported by timely and complete invoices and other necessary documentation of a claim." *Id.* at ¶¶ 4.1.1–4.1.3. After Rehab Solutions provided a refund for a claim, the Agreement contained a procedure for Rehab Solutions to appeal the disallowed claim. *Id.* at ¶¶ 4.2–4.2.2.

St. James was required by the Agreement to provide notice to Rehab Solutions with respect to denied claims. *See* Dkt. No. 1-2 at ¶ 4.3. Specifically, the Agreement indicates that "[i]n order to timely appeal denied claims, Rehab Solutions requires notification and receipt of the detailed remittance advice and UB04 for residents within 14 calendar days of the 'paid date' on the remittance advice." *Id.* at ¶ 4.3.1. If St. James did not notify Rehab Solutions "of such a claim denial . . . disallowance or recapture as required [in the Agreement], Rehab Solutions [was[ entitled to receive and retain full payment of such claim rom [St. James] and [had] no obligation to refund or reimburse any portion of such claim to[St. James.]" *Id.* at ¶ 4.3.2.

Per the terms of the agreement either party could terminate the Agreement if either materially failed "to comply with any of the obligations, liabilities or undertaking assumed by such party under this Agreement" following a stated period of written notice. *See* Dkt. No. 1-2 at

---

[1] The Agreement specifically notes that "without limitation, Rehab Solutions shall have no obligation to refund or reimburse in any instance where Rehab Solutions has committed no act or omission giving rise to disallowance or recapture but an act or omission of [St. James] or a third party results in disallowance or recapture[.]" Dkt. No. 1-2 at ¶ 4.1.

¶ 1. However, Rehab Solutions could terminate the Agreement "immediately" upon the occurrence of, amongst other things, the "failure of [St. James to pay compensation as provided for herein." *Id.* The Agreement also contained a choice of law provision indicating it was to "be governed and construed in accordance with the laws of the State of North Carolina." *Id.* at ¶ 16.

### B. The Dispute

Rehab Solutions began providing services at St. James' facility in October of 2013, and provided invoices for services rendered through September 2014. *See* Dkt. No. 1-5 at 7-17. Rehab Solutions asserts that it provided St. James with "the necessary information to seek reimbursement from third-party payors for the services rendered by Rehab Solutions[,]" including, "*inter alia*, therapy and service logs, ICD-9 codes for medical treatment diagnoses, G codes, change of therapy and information regarding the onset, star and end dates of care." Dkt. No. 33 at 13 (citing Dkt. No. 33-5 at ¶¶ 4, 9-10 "Affidavit of Brandy Shumaker").

Nevertheless, Rehab Solutions asserts that St. James did not pay Rehab Solutions for services rendered from October 2013 through April 2014. *See* Dkt. No. 33 at 14 (citing Dkt. No. 33-4 at ¶ 10 "Affidavit of Donald R. Tesner"). Rehab Solutions claims that it made numerous attempts to collect past-due amounts until it sent a demand letter to St. James on May 14, 2014, requesting that St. James immediately pay all past-due invoices. *Id.* (citing Letter from Emily A. Shupe, Counsel for Rehab Solutions, to Administrator of St. James (May 14. 2014) (Dkt. No. 1-3)). Rehab Solutions further asserts that "St. James did not pay those invoices, but it represented that it would work towards a payment plan for the outstanding invoices if Rehab Solutions would continue to provide services at its facility." *Id.* (citing Dkt. No. 33-4 at ¶ 10).

Accordingly, Rehab Solutions states that it kept providing services while the parties "attempted to negotiate a payment plan." Dkt. No. 14 (citing Dkt. No. 33-4 at ¶ 11). Rehab

Solutions argues that "St. James never raised any issues with the services rendered, the amounts of the invoices, or the third-party payor reimbursement information." *Id.* To the contrary, Rehab Solutions claims that "H. Roger Mali, a principal of St. James, inquired if Rehab Solutions would replace the current therapy service provider in another one Mali's skilled nursing facilities." *Id.* (citing Dkt. No. 33-4 at 13-14, ¶ 15).

Rehab Solutions acknowledges that "St. James did make some payments towards the past-due invoices during the parties' negotiations in the summer of 2014. Dkt. No. 33 at 13 (citing Dkt. No. 33-4 at 11, ¶ 11). However, Rehab Solutions is adamant that "at no time did Rehab Solutions ever inform St. James that these payments constituted a full payment of its debt to Rehab Solutions." *Id.* (citing Dkt. No. 33-4 at ¶ 11). Thus, Rehab Solutions claims that "[d]espite the initial progress towards repayment, St. James again became delinquent in its payments[.]" *Id.* at 14-15 (citing Dkt. No. 33-4 at ¶ 12).

On August 29, 2014, Rehab Solutions sent St. James a letter in which it informed St. James that, unless certain conditions were met, including payment of the then-outstanding balance of $265,763.93, Rehab Solutions would terminate the Agreement effective September 12, 2014. *See* Dkt. No. 33 at 15 (citing Letter from Emily A. Shupe, Counsel for Rehab Solutions, to Administrator of St. James (August 29, 2014) (Dkt. No. 1-4)). Still, Rehab Solution contends that St. James did not pay any portion of the outstanding balance. *Id.* (citing Dkt. No. 33-4 at ¶¶ 13-14). Accordingly, Rehab Solutions states that it terminated the Agreement pursuant to Section 1(d) on September 12, 2014. *See id.* (referencing Dkt. No. 1-2 at ¶ 1).

St. James gives a different account of the relationship between the parties. St. James emphasizes that Rehab Solutions "was **required** to record in a 'Therapy Log Book' the nature of the services rendered and the resident for whom said services were provided." Dkt. No. 44 at 6.

(emphasis in original). According to St. James, Rehab Solutions "[i]mmediately . . . began defaulting on its obligation to accurately record and document the services that they had provided to St. James' residents in the Therapy Logs." *Id.* Specifically, St. James argues that Rehab Solutions "refused to remit payment previously made back to St. James, or alternatively, apply such payments to other amounts due and owing[.]" Dkt. No. 44 at 7.

As a result, St. James asserts that "an alleged discrepancy developed between the amounts that [Rehab Solutions] invoiced St. James for, and the amounts that [St. James was] demanding from the insurance carriers." *Id.* St. James claims that it "**immediately** communicated the issue to [Rehab Solutions] and reiterated the necessity of proper record keeping to ensure that [Rehab Solutions was] promptly and accurately compensated for [its] services and that St. James was remunerated for payments it had made to [Rehab Solutions]." *Id.* (emphasis in original). However, as the balance of the claims continued to grow, St. James argues that Rehab Solutions "refused to correct the deficiencies and inaccuracies in the Therapy logs and in some cases, **refused to provide any documentation whatsoever!**" Dkt. No. 44 at 7 (emphasis in original). Thus, despite the fact that St. James asserts it would reiterate "that in order for payments to be made to [Rehab Solutions], St. James **needed** the Therapy Logs to be capable of billing the insurance carriers." *Id.* (emphasis in original).

Rehab Solutions began to demand payment in May of 2014, but St. James indicates that Rehab Solutions did so "**despite repeated requests from St. James that [Rehab Solutions] correct, and in many instances provide at all, the Therapy Logs which St. James required in order to bill the insurance carriers**." Dkt. No. 44 at 7 (emphasis in original). When St. James refused to pay without proper Therapy Logs, St. James asserts that Rehab Solutions "began to falsify the Therapy Logs that it did provide to St. James, in many cases sending

Invoices to St. James which grossly exaggerated the services rendered; and in others, invoicing St. James for services that were never actually performed." *Id.*

St. James concludes arguing that it "has no conflict with paying [Rehab Solutions] for the services it has rendered on behalf of St. James' patients." Dkt. No. 44 at 8. However, St. James argues it is incapable of making "payments on an alleged balance which, [Rehab Solutions] has repeatedly inflated through exaggerated costs and services; and for services that St. James is incapable of invoicing to the appropriate insurance carriers as a result of [Rehab Solutions'] failure and/or refusal to provide accurate therapy records." *Id.*

### III. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rule of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.,* 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exist[.]" *Stansberry v. Air Wis. Airlines Corp.,* 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Summary judgment is

appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.]" *Stansberry,* 651 F.3d at 486 (citing *Celotex Corp. v. Catrett,* 477 U.S. 371, 322–23 (1986)). However, "even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.,* 767 F.3d 611, 630 (6th Cir. 2014).

### IV. DISCUSSION

According to St. James, there are three questions of fact that should preclude Rehab Solutions' from summary judgment in this case: (1) whether Rehab Solutions wrongfully withheld therapy logs from St. James; (2) whether Rehab Solutions overstated invoices that were provided to St. James; and (3) whether Rehab Solutions returned funds paid by St. James for later-denied claims. *See* Dkt. No. 44 at 12; Dkt. No. 45 at 5. Rehab Solutions disagrees, and contends that "[o]nce the Court clears away St. James' generalities and gets down to the specific facts in this case, it becomes clear that St. James has no real response to any of the arguments in Rehab Solutions' motion." Dkt. No. 45 at 1. The Court will deny Rehab Solutions' Motion for Summary Judgment, because the Court finds that there is evidence in the record that creates a genuine question of fact for the bench trial.

### A. The Therapy Logs and Overstated Invoices

St. James is adamant that Rehab Solutions "was required to record in a 'Therapy Log Book' the nature of the services rendered and the resident for whom said services were provided." Dkt. No. 44 at 6. Nevertheless, St. James contends that Rehab Solutions "[i]mmediately . . . began defaulting on its obligation to accurately record and document the

services that they had provided to St. James' residents in the Therapy Logs." *Id*. (emphasis in original). Rehab Solutions takes the position that "the Agreement does not require Rehab Solutions to provide St. James with 'Therapy Logs.'" Dkt. No. 45 at 5. However, as discussed in a prior order, and after reviewing the record again, the Court finds that there is a question of fact as to whether accurate Therapy Logs were provided. *Cf.* Dkt. No. 50 at 8.

As previously discussed, the Agreement indicates that, amongst other things, Rehab Solutions was required to provide "accurate CPT coding and ICD-9 identification on service logs submitted to the billing office" and "all required therapy billing information to the business office per the terms of the contract[.]" Dkt. No. 1-2 at 10. Critically, the affidavit of Rehab Solutions' own witness, Ms. Brandy Shumaker, similarly indicates that "[t]he information *necessary* for reimbursement" includes "[t]herapy service records and logs, including minutes of therapy provided[.]" Dkt. No. 33-5 at ¶ 4(a).[2] Accordingly, the Court finds that Rehab Solutions is incorrect in its assertion that "the Agreement does not require Rehab Solutions to provide St. James with 'Therapy Logs.'" Dkt. No. 45 at 5.

Rehab Solutions next argues that "[e]ven if there were such a requirement, Brandy Shumaker's affidavit that St. James was given access to all information for St. James to seek reimbursement from insurance carriers through Rehab Solutions' software applications is undisputed." Dkt. No. 45 at 5. After reviewing the record, the Court finds that there is record evidence to support the contention that information was missing, the invoices were incorrectly billed, and that St. James raised invoice issues with Rehab Solutions. Indeed, as previously

---

[2] Ms. Shumaker further indicates that, consistent with the Agreement the following were necessary in order to be provided to St. James: (1) "Internal Classification of Disease (ICD-9) Codes, which show which diseases are applicable to each individual resident. This needs to be included on the billing to know why the resident is being treated by nursing and or therapy;" Dkt. No. 33-5 at ¶ 4(b); and (2) "Current Procedural Terminology ("CPT") Codes are used to show what types of services were rendered during each therapy session;" *id*. at ¶ 4(f). *Cf*. Dkt. No. 1-2 at 10 (noting Rehab Solutions was required to provide "accurate CPT coding and ICD-9 identification on service logs submitted to the billing office[.]").

mentioned, the Court reviewed every piece of record evidence in this matter, and found an email from Mr. Roger Mali, the principal of St. James, from July of 2014 indicating that he raised certain issues with regard to the billing amounts and services rendered under the Agreement by Rehab Solutions:

> I think the only main item is that we need some sort of mechanism to reconcile the bills (even the past due bills). . . . [T]he idea is that we have to have a right to work with Rehab Masters to reconcile the past due invoices. I think some of the issues that got us to where we are was the misunderstanding with some of the bills. To that end - I think as long as we agree that the parties will work in good faith and mutual acceptable adjustments, that works for everyone.

Dkt. No. 44-3 at 75; *see also id.* at 81. These stated "issues" and "misunderstandings" regarding the Therapy Logs and invoices lead this Court to conclude that there is a question of fact as to whether St. James was actually given access to all information in order to seek reimbursement from insurance carriers through Rehab Solutions' software applications.

### B. The Contract

St. James also argues that it is entitled to Summary Judgment because "the Agreement provides for a specific process to be followed by the parties when a third-party payor denies a claim." Dkt. No. 45 at 6. Here, St. James has raised several affirmative defenses. *See* Dkt. No. 18. St. James' failure to mitigate defense appears to be the only defense with merit at this stage. *See* Dkt. No. 18 at ¶ 6.

Rehab Solutions correctly argues, and St. James does not dispute, that North Carolina Law should apply to this dispute because of the North Carolina choice of law provision included in the Agreement. *See* Dkt. No. 33 at 15-16 (citing Dkt. No. 1-2 at ¶ 16); *see also id.* (citing *Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 932 (E.D. Mich. 2008), to note that "Michigan has adopted the approach set forth in the Restatement (Second) of Conflict of Laws. According to this approach, a contractual choice of law provision will be binding unless either: (a) the chosen

-10-

state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [§] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.") (internal citations omitted).

"North Carolina recognizes a failure to mitigate damages as a valid affirmative defense." *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 983 F. Supp. 2d 652, 667 (M.D.N.C. 2013) (citing *Elm St. Gallery, Inc. v. Williams*, 191 N.C. App. 760, 762, 663 S.E.2d 874, 875 (2008) *reconsideration denied*, No. 1:12CV260, 2013 WL 5840050 (M.D.N.C. Oct. 30, 2013)). "The purpose of asserting the affirmative defense of failure to mitigate damages is to introduce 'facts which show that the plaintiff's . . . cause of action does not entitle him to so large an amount as the showing on his side would otherwise justify the jury in allowing him.'" *Id.* (citing S*cott v. Foppe*, 247 N.C. 67, 71, 100 S.E.2d 238, 240–41 (1957), which cites 1 Sutherland, Damages, 4th ed., § 149)).

Here, St. James argues that Rehab Solutions' "claims are barred, in whole or in part, for failure to mitigate damages," because

> despite multiple requests from [St. James], Rehab Solutions repeatedly withheld, falsified and refused to remit the Therapy Logs for [St. James' patients], which are necessary for Defendant to receive remuneration from the appropriate insurance provider, (i.e. Medicare, VA, private insurance), and which are also necessary for [St. James] to make payment to [Rehab Solutions], for products and/or services properly billed to [St. James].

Dkt. No. 18 at ¶ 6. According to St. James, "[h]ad [Rehab Solutions] properly maintained its Therapy Logs, allowing [St. James] to submit such records to its patient's insurance carriers, [Rehab Solutions] would have no damages, whether fabricated or legitimate." *Id.*

Rehab Solutions argues that because it attempted to negotiate with St. James about the invoices "the undisputed facts conclusively demonstrate that Rehab Solutions did make efforts to mitigate its damages." Dkt. No. 33 at 26-27. However, as Rehab Solutions itself notes, "[m]itigation requires the non-breaching party to use fair and reasonable prudence required to reduce the damage from the breach." Dkt. No. 33 at 26 (citing *Turner Halsey Co. v. Lawrence Knitting Mills, Inc.*, 38 N.C. App. 569, 572 (N.C. Ct. App. 1978)).

After reviewing the record, and construing the evidence and all reasonable inferences in the light most favorable to the non-moving party, the Court finds there is a question of fact as to whether Rehab Solutions fairly and reasonably tried to mitigate its damages—namely, the degree of Rehab Solution's cooperation and whether it should have been more forthcoming with assistance in providing medical records or access to them so that St. James could properly bill insurance carriers. *See*, *e.g.*, *Guessford*, 983 F. Supp. 2d at 667 (finding genuine disputes of material fact preclude summary judgment because the Defendant argued that Plaintiff failed to mitigate his damages by not providing the requisite documentation for evaluation, never returned a signed medical authorization sent by Defendant to Plaintiff, and did not provide any additional medical records beyond those Plaintiff felt was necessary).

## V. CONCLUSION

In conclusion, the Court notes that Rehab Solutions has put forth a compelling argument in support of its Motion for Summary Judgment. However, the Court emphasizes that the evidence and all reasonable inferences *must* be construed in the light most favorable to the non-moving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348, 89 L.Ed.2d 538. Keeping this in mind, the Court finds that the nonmoving party has set forth facts showing a triable issue for the bench trial as to whether the therapy logs were properly submitted, the invoices were properly

stated, and whether there was a failure to mitigate damages. *Cf. Wrench LLC.,* 256 F.3d at 453. For the foregoing reasons, the Court **HEREBY DENIES** Rehab Solutions' Motion for Summary Judgment [33].

    IT IS SO ORDERED.

Dated: September 15, 2015

                                                         /s/ Gershwin A Drain
                                                         HON. GERSHWIN A. DRAIN
                                                         United States District Court Judge